IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

Iaan Michael Lee,  )
   Plaintiff,  )
)
v.  ) 1:12cv592 (AJT/IDD)
)
Sgt. Massenburg, et al.,  )
   Defendants.  )

MEMORANDUM OPINION

Iaan Michael Lee, a Virginia inmate proceeding pro se, has filed a civil rights action, pursuant to 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs during his former incarceration at the Riverside Regional Jail ("RRJ"). The matter is presently before the Court on a Motion for Summary Judgment filed jointly by defendants Gohar Abassi, M.D., Sgt. Herman Massenburg,[1] and Sgt. Tyrone McIntyre. Defendants provided plaintiff with notice and an opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), and plaintiff has filed a reply captioned as his Statement of Undisputed Facts. For the reasons that follow, defendants' Motion for Summary Judgment will be granted, and final judgment will be entered in their favor.

I. Background

The following material facts are undisputed. On the evening of August 1, 2011, a fight occurred among the inmates in a housing pod at RRJ. Sgt. Massenburg was one of the officers

---

[1] In the complaint and previous Orders in this action, Sgt. Massenburg's name was misspelled as Massenberg. As he has provided the correct spelling the Memorandum in Support of Motion for Summary Judgment, see id. at 1 n.1, that spelling is used here.

who responded. When he arrived at the pod, Sgt. Massenburg observed plaintiff and another inmate still on the floor. They were separated, and blood was observed in the area of plaintiff's nose and mouth. Massenburg Aff. ¶¶ 2-3. Plaintiff was examined by a Correctional Health Assistant ("CHA") while still in the pod, and he stated that he was having difficulty walking because he had been kicked in the back of his left knee during the altercation. Pursuant to instructions of the CHA, plaintiff was given several bags of ice to place on his knee. Id., ¶ 3. He was then relocated to another pod. Id.

The following day, Sgt. Massenburg interviewed plaintiff as part of the investigation of the fight. Plaintiff had been seen that day by another CHA, and had been given ice several more times. Id. As the result of the investigation, plaintiff was charged with fighting. Id. Sgt. Massenburg had no further involvement with plaintiff regarding the injured knee or any related medical issue, and had no knowledge that plaintiff had a medical problem that allegedly was not addressed. Id., ¶ 4.

On August 2, 2011, the day after the altercation, plaintiff complained to a member of the RRJ nursing staff that he fell on his knee during the fight the day before and was experiencing an increased amount of pain. Abassi Aff. ¶2. A nurse examined plaintiff and noted that his left knee was swollen with limited range of motion, and that the pulse was within normal limits.[2] The nurse advised plaintiff to keep his leg elevated, gave plaintiff Motrin, and stated that she would forward the information to Dr. Abassi for evaluation. Id. Dr. Abassi initialed that he had reviewed the nurse's notes, and directed that plaintiff be put on the list to be examined by the

---

[2]A normal pulse in the foot indicated the absence of damage to blood vessels in the leg. Abassi Aff. ¶2.

2

doctor if he was still in pain. Id., Ex. A.

Plaintiff was examined by a nurse again the following day, August 3. During the examination plaintiff was lying in bed, and he complained that he was unable to move his left knee normally or to ambulate on the leg, and he rated the pain he was experiencing as 10 out of 10. Abassi Aff. ¶ 3. The nurse noted that the knee was swollen and was not discolored, although a mild redness was visible. The nurse directed that plaintiff be given crutches to help him ambulate, and she referred plaintiff to be seen by Dr. Abassi. Id.

Dr. Abassi saw plaintiff the following day, August 4. Plaintiff stated that he had twisted his left knee while involved in an altercation, and that he was experiencing pain and was unable to put weight on the knee. Id., ¶ 4. Dr. Abassi noted some diffuse swelling of the knee with limited range of motion, and diagnosed a knee injury. Id. Dr. Abassi ordered an x-ray of the knee and prescribed a pain reliever, Tramadol, for plaintiff. Id., Ex. B-C. Plaintiff's knee was x-rayed that same day, and the radiologist noted, "There is suspicion for a very slightly impacted lateral tibial plateau fracture," but further steps needed to be taken "to further confirm or exclude a fracture." Id., ¶ 5; Ex.D.

When Dr. Abassi saw the x-ray report on August 5, 2011, he ordered that plaintiff be referred to an outside orthopedic specialist, and the appointment was scheduled. Id., ¶6. Plaintiff was seen at Colonial Orthopaedics on August 8, 2011, and he was diagnosed with a tibial plateau fracture in the left knee. Plaintiff received a knee immobilizer or stiff brace, with recommendations that he continue to use ice and to elevate his leg. He was also instructed to return for a follow-up visit in about five (5) weeks, and an appointment was scheduled. Id., ¶ 7.

Nurses' notes for September 3, 2011 include a statement that plaintiff had "placed a

grievance form toward medical concerning he injury to the knee on 8/01/11. Inmate is c/o not receiving ice to place on his knee after returning from his outside appt and not having a follow-up visit with Dr Abassi since 8/4/11. Will forward to be seen by Dr. Abassi for follow-up visit."

Dr. Abassi saw plaintiff on September 6, 2011. Plaintiff was wearing his knee immobilizer, and stated that he wanted something for the pain in his knee. Abassi Aff. ¶ 9. Dr. Abassi prescribed an NSAID, Diclofenac, which is used to treat pain and inflammation. Id.

On September 19, 2011, plaintiff had his follow-up appointment with the orthopedic specialist. The specialist recommended that plaintiff continue to bear no weight on his left leg, to use crutches, to be housed where he could avoid steps, and to use ibuprofen. Abassi Aff., Ex.D. On September 21, pursuant to those recommendations, Dr. Abassi ordered that plaintiff continue to have crutches and to be provided with Motrin, and to be placed in a housing unit without steps. Id., ¶ 10.

On September 29, 2011, plaintiff submitted the only Inmate Medical Request Form he made for that calendar year.[3] Abassi Aff., Ex.E. In it, he stated that he was on crutches and inquired whether he could receive medical approval to wear tennis shoes. Abassi Aff., ¶ 11. Nursing staff responded that if plaintiff had tennis shoes in his property, he could simply write to the property department and ask for them. Id.

Dr. Abassi saw plaintiff again on November 22, 2011. Plaintiff complained of pain in his left knee at night. He also stated that he was not experiencing swelling or pain on walking, but he felt more pain when he bent the knee. Dr. Abassi noted mild swelling in the knee with no

---

[3]Pursuant to RRJ policy, inmates may request medical services or treatment through Inmate Medical Request Forms. These forms are made readily available, and they can be given to nursing staff who make rounds through all housing units four (4) times daily. Abassi Aff. ¶11.

4

tenderness, and ordered another follow-up visit with the orthopedic specialist. Dr. Abassi also prescribed Tramadol again for plaintiff's pain. Abassi Aff. ¶12.

Plaintiff had the follow-up appointment with Colonial Orthopedics on January 30, 2012. The orthopedic specialist noted some degenerative joint disease or arthritis in the knee, but otherwise noted no significant problems and recommended no treatment. Abassi Aff. ¶13, Ex.D.

Plaintiff registered no additional complaints and requested no additional treatment until March 28, 2012, when he submitted his only Inmate Medical Request Form for 2012. In it, he requested follow-up care for his knee because he had "re-injured" it. Abassi Aff. ¶14, Ex.E. Plaintiff was seen by a nurse the following day, and he complained of pain in the knee and requested to be seen by a physician. Abassi Aff. ¶15. Dr. Abassi saw plaintiff on April 3, 2012, and noted that plaintiff complained that he was experiencing pain over the left knee when going up and down stairs and requested to be moved to the bottom floor. Dr. Abassi noted no swelling or tenderness in the knee, no cracking or popping sounds, and no obvious knee deformity. He also found that the range of motion in the knee was good, and he included a notation in his Physician's Orders that plaintiff should be moved to the bottom floor. That was the last time Dr. Abassi saw plaintiff. Abassi Aff. ¶16. Dr. Abassi attests that he had no knowledge of plaintiff having any medical condition during his incarceration to RRJ for which he did not receive appropriate medical care. Abassi Aff. ¶17.

Defendant Sgt. McIntyre was informed by his supervisors on August 26, 2011 that during plaintiff's appeal of his disciplinary conviction for fighting, he complained that he had been denied a grievance to use in complaining about the medical department, and also was denied the opportunity to see the magistrate. Sgt. McIntyre was asked to investigate. McIntyre Aff. ¶2.

The following day, Sgt. McIntyre spoke with plaintiff, who stated that he had been attacked by the other inmate and wanted to press charges, but no one took him to the magistrate. Plaintiff also said that he filled out a request form requesting a grievance on medical, and that he fell down and hurt his knee as he was trying to get the other inmate off him. McIntyre Aff. ¶3. Sgt. McIntyre spoke to the officers who relocated plaintiff after the fight, and they denied that plaintiff ever asked to press charges against the other inmate. In addition, officers who would have handled any request by plaintiff for a grievance form denied that they had received any such request. Id. Sgt. McIntyre escorted plaintiff to booking so he could speak with the magistrate, and after hearing plaintiff's explanation of the altercation the magistrate declined to issue a warrant due to inconsistencies in plaintiff's story. McIntyre Aff. ¶4. Also on that same day, Sgt. McIntyre supplied plaintiff with a grievance form, which plaintiff subsequently filled out and gave to another officer. Id., Ex.A. Still on that same day, Sgt. McIntyre telephoned the officers in plaintiff's pod and informed them that plaintiff had received permission to be supplied with pillows to elevate his leg and ice to apply to the knee three times a day. McIntyre Aff. ¶5. Sgt. McIntyre had no further involvement with plaintiff, and had no knowledge of plaintiff having any medical problem that was not addressed. Id.

## II. Standard of Review

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving

party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. " [T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

### III. Analysis

To succeed on an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate facts sufficient to show that jail officials were deliberately indifferent to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 105 (1976); Staples v. Va. Dep't of Corr., 904 F.Supp. 487, 492 (E.D.Va. 1995). To establish that inadequate medical treatment rises to the

level of a constitutional violation, a plaintiff must satisfy two distinct elements. First, he must show a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must demonstrate that defendants exhibited deliberate indifference to that medical need "by either actual intent or reckless disregard." Estelle, 429 U.S. at 106; Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). The prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted). Under this second prong, an assertion of mere negligence or even malpractice is not enough to state an Eighth Amendment violation; "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also, Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

Importantly, a prisoner's disagreement with medical personnel over the course of his treatment will not support an Eighth Amendment cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Thus, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761 (8th Cir. 1996).

### A. Sgt. Massenburg and Sgt. McIntyre

It requires little discussion to conclude that Sgt. Massenburg and Sgt. McIntyre can have

no liability to plaintiff for the claim of deliberate indifference he asserts. In this circuit, "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier, 896 F.2d 848; accord, Boblett v. Angelone, 957 F.Supp. 808, 813 (W.D. Va. 1997). No such circumstances have been shown to have existed here. Accordingly, summary judgment will be entered in favor of defendants Massenburg and McIntyre.

B. Dr. Abassi

A condition is sufficiently serious to merit constitutional protection if it is "a condition of urgency, one that may produce death, degeneration, or extreme pain." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994). Here, it is undisputed that plaintiff's knee injury meets that test. Accordingly, the first element of an Eighth Amendment claim against Dr. Abassi is satisfied. However, plaintiff's claim founders on the second prong of the test, because the uncontroverted material evidence shows that Dr. Abassi was not deliberately indifferent to his condition.

The evidence demonstrates that Dr. Abassi reviewed a nurse's notes concerning plaintiff's knee on August 2, the day after the injury occurred, and directed that plaintiff be put on the list to be examined. Plaintiff was seen by a nurse again the following day, and then by Dr. Abassi on August 4. Upon examining plaintiff's knee, Dr. Abassi ordered an x-ray and pain medication. When Dr. Abassi saw the x-ray report on August 5 and noted that it revealed a possible fracture, he ordered that plaintiff be seen by an outside orthopedic specialist, and the appointment took place on August 8. The specialist instructed plaintiff to return for a follow-up

9

visit in five (5) weeks, and the appointment was scheduled. After plaintiff complained to a nurse on September 3 that he was not receiving ice for his knee and had not been seen by Dr. Abassi since returning from his outside appointment, Dr. Abassi saw plaintiff on September 6 and prescribed an NSAID for plaintiff's complaints of pain. Plaintiff had his follow-up appointment with the outside specialist on September 19, and on September 21 to implement the specialist's recommendations Dr. Abassi ordered that plaintiff continue to have crutches, to receive Motrin, and to be housed in a unit without steps. Dr. Abassi saw plaintiff again on November 22, prescribed additional pain medication, and ordered another follow-up visit with the orthopedic specialist. The outside appointment took place on January 30, and the orthopedic specialist noted no significant problems with the knee and ordered no additional treatment. When plaintiff submitted an Inmate Request Form on March 28 stating that he had "re-injured" the knee, he was seen by a nurse the next day and by Dr. Abassi on April 3. Dr. Abassi found no swelling, tenderness, or popping sounds in the knee, and found that plaintiff's range of motion was normal. Nonetheless, because plaintiff stated that he was experiencing pain when using the stairs, Dr. Abassi ordered that plaintiff be moved to the bottom floor.

The foregoing chronology belies any suggestion that Dr. Abassi exhibited deliberate indifference to plaintiff's knee injury "by either actual intent or reckless disregard," cf. Estelle, 429 U.S. at 106, or that his actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. To the contrary, defendants' exhibits indicate that each time plaintiff voiced a complaint about his knee, he was seen promptly and palliative measures were taken, including no less than three (3) visits to an outside specialist. Under these circumstances, the second element of a successful claim of an

Eighth Amendment violation is not present here.

Plaintiff's Statement of Undisputed Facts does not alter this conclusion. First, plaintiff's statement is unsworn and does not subject the author to the penalty of perjury for any misstatements. Therefore, it would be insufficient to defeat defendants' summary judgment request under any circumstances. Fed. R. Civ. P. 56(e); see United States v. White, 366 F.3d 291, 300 (4th Cir. 2004) (unsworn argument does not constitute evidence to be considered in opposition to summary judgment motion); Price v. Rochford, 947 F.2d 829, 832 (7th Cir. 1991) (verification based on personal knowledge or information and belief is insufficient to oppose a motion for summary judgment because it avoids the possibility of perjury). Moreover, even if plaintiff's statement had been signed under penalty of perjury, the non-moving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). Even where the non-moving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings, a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994).

Lastly, even if the substance of plaintiff's Statement were considered, defendants still would be entitled to the summary judgment they seek. Plaintiff argues essentially that measures should have been taken to treat his knee more quickly and more effectively. These assertions amount to no more than plaintiff's disagreement with institutional personnel over the course of his treatment, which as a matter of law will not support an Eighth Amendment claim. Wright,

766 F.2d at 849. Accordingly, Dr. Abassi is entitled to summary judgment on plaintiff's claim of deliberate indifference.

## IV. Conclusion

For the foregoing reasons, defendants' Motion for Summary Judgment will be granted, and summary final judgment will be entered in their favor. An appropriate Order and Judgment shall issue.

Entered this 30th day of May 2013.

Alexandria, Virginia

/s/
Anthony J. Trenga
United States District Judge